Thank you. All right, we're going to call case number two now. And that case is number 21-2752, Tate v. Dart. And it's Mr. Casper. Good morning, Your Honors. May it please the court. My name is Cass Thomas Casper. I represent the plaintiff, Larry Tate, in this matter. Your Honors, we submit that the district court below erred by finding, on its own, that my client, Plaintiff Tate's restriction that he could not respond to situations involving a significant chance of violence prevented him from performing an essential job function of the correctional lieutenant because it did not appropriately weigh the essential functions factors that are laid out in the as in Nancy, which lists seven factors that are to be considered evidence of whether or not a particular job function is an essential function for purposes of our ADA analysis. Your Honor, the simple issue here in this court is that all of the cases, cited in brief and otherwise, state that the essential functions question, what is or is not an essential function, is a question of fact, not one of law. That's Tanyan v. Dunham's athleisure, Brown v. Smith, Schell v. Smith, Byard v. Euclid, Brevridge, Kaufman v. Peterson Healthcare, Miller v. Department of Transportation, not Department of Corrections, Department of Transportation. They all say whether or not a particular function is essential within the meaning of the ADA is a question of fact, and we submit that the question of fact is not an essential function. Okay, if it's that, you're going to have to help us with it. In addition to a prison riot situation, I can think of quite a few situations where a lieutenant might be called upon to move from a low, you know, prisoner contact situation to a high one. COVID or other outbreak, mass terminations, difficulty recruiting. What would a prison do if all of the lieutenants in classification, records, laundry, kitchen positions would not be moved into other spots as needed because of accommodation? Your Honor, the record evidence, I've got two responses to that. The first one is the record evidence below, and it was undismuted. The correctional lieutenants don't rotate. The correctional officers do. The correctional officers are not fungible. They bid for a spot by seniority, and they stay there. Lieutenant Collins testified he'd stayed in the same positions for years. Lieutenant Mundt testified they don't move. Now, that does raise the issue of what about that hypothetical scenario where there is a riot? Two things about that. First of all, it's for the jury to decide if that tips it into an essential function. Second of all, my client's restriction was not that he can never do it. It was merely that he needed to avoid it. And he testified, and Lieutenant Mundt testified, if it came down to it, he could do it. When did your client first propose the idea that avoid meant that he could still respond to a prison riot if necessary? Your Honor, I don't know that he ever specifically articulated that in his discussions with Ryerson and Conchola, but they had discussions where they talked about whether he could meet the essential job functions. And from the record evidence, our view of the case is that Ryerson and Conchola basically presented him with a fait accompli, and they weren't willing to consider any of his requests for an accommodation. That's our view of the record below. So for those reasons, we submit that the avoid question would cover the situation where there's an emergency prison riot. But then we have to go back to what Collins and Lewis said. This never happened as a factual matter. And Your Honor, I think there's something waiting in the weeds. It's that we all stand here, we don't work in the jail, and it's easy to think, well, Department of Corrections is a dangerous place. But Cook the Howard case regarding the sex harassment, it states that on the first page, all the different assignments are very different. Officers are exposed to different job functions, there's different units, there's different work throughout the jail. This isn't your run of the mill, excuse me, jail where everybody's around the inmates. It's a massive complex, one of the biggest in the country. And the lieutenants do jobs throughout that complex. And Larry, all he wanted was to say, I've worked in records before, there's no inmate contact in records, I can work there. And to boot, he proved it was vacant. It was indisputed. We proved there was a vacancy in the records. So there was no reason for them not to grant him that particular accommodation when there was a vacancy there. Mr. Casper, how do you react to this? One of the shortcomings it seems in the evidentiary record to me or a challenge for you is that Mr. Tate didn't come forward with evidence showing that those other lieutenants are incapable physically of responding to a fire or a riot or whatever need there may be to have physical interaction with inmates. What he did was he said, they just don't, they haven't, they don't have any experience with it. But not having experience is different than being physically unable in the event the circumstance were to arise. And that's where I hate to repeat myself, but that's where we come back to. His restriction is merely avoid, not don't ever do it. Yeah, I worry that you're changing the meaning, you're changing what avoid means on appeal vis-a-vis the way he presented that in the jail. Meaning now it's like, well, I can if I have to. But then it was more, I can't do this. My back problems are too severe. They may have been. What I know is that the paperwork from the doctor said avoid all the way back, all the way back to, you know, it was initially presented to Ryerson and to Controlla. And we have seen cases where it said, like, I believe the Dargeson-Miller case, where they say, don't do it, absolutely do not do this particular task. And his was merely avoid. So I don't think we're trying to- need to ask a doctor about, I mean, we see this fairly often in ADA cases where an employer is respecting medical restrictions. And then the result is tough on the employee. And then the employee says, well, it's not that bad. That's what you're telling us. But to me, avoid means avoid. And even Mr. Tate said that in his deposition that if he needed to do it, he could do it. And Lieutenant Mon- oh, I'm sorry, Lieutenant Calderon in his declaration, they all said if he needed to do it, he could do it. So it's not like we're trying to change the evidence up here. Back before summary judgment, folks were saying, if it really came down to what he could. And I mean, we submit that- The question is what the medical restrictions are. Because the employer has to respect those, right? I would agree with that. Okay. Could I ask you the- we're familiar with Miller against Department of Highways, with the Kokomo cases, where- and I will tell you that, frankly, I think the district court's opinion is written in a way that is too deferential to the employer's judgment. But what concerns me most in this case is the requirement that people, almost everybody in the jail, would need to be able to respond to an emergency physically. Do we have case law that addresses that kind of emergency element of jobs? I have case law that's against me here, which would be the Miller and the Darges case. But those officers, one of them was blind, one of them had a stroke, and they could not do it. There was not even a dispute about that. I don't even think those plaintiffs said there was a dispute about that. Right. We have that case law. And I understand you're saying avoid doesn't mean never. I'm not persuaded by that, but I understand that's your response. But for example, what do we do with a firefighter who is no longer able to carry someone out of a building? Doesn't have to do it every day. Maybe not every week. But that's part of the job, right? I guess I'm hitting a little wall here because what- I have to go back to that. It didn't say it can't. It said avoid. And I think maybe the issue for all of us is it should be the jury that determines what does avoid mean here. And I'm not sure that that- well, I'm not sure that that is a question of law for us to talk about here. I think that- shouldn't the jury have to say what does avoid mean? What was the meaning of those medical documents? And that's all we're asking for. The employer has to respond as to what avoid means. And it's pretty clear, to me at least. Would you agree that if emergency response is- it may be rare, but it can still be an essential function of a job? I guess that's- I do disagree with that. Like, that's what we're arguing about. Like the other lieutenants who testified, they said they never did it. And from my view, that's the point where we say, okay, let the jury decide. Maybe they'll say it is an essential function and say if it happens once every two years, then it's essential. Maybe they won't say that. But I think that's the fundamental thing we come back to. Do you think that's a decision for the jury? That's my fundamental position about this whole case. Yes, it is. Your Honor, I see my time is out. Look, you're going to get your rebuttal time. You know that. Don't worry. Don't anyone worry in the courtroom. Although, you know, don't misuse Lady Bountiful either. Okay. Thank you, Your Honor. Thank you. Okay. Ms. Gregory. Ms. Gregory. Thank you. Hello. Hello. Go ahead. May I please the court? Mr. Tate was not entitled to an ADA or IHRA accommodation. Both the ADA and IHRA accommodations are analyzed under the same rubric. So I will speak specifically regarding the ADA today, but it is subsumed within what I'm saying. There are two main reasons I'll discuss today. The first is that Mr. Tate was not a qualified individual due to his own medical restrictions. And second, even if Mr. Tate were a qualified individual, the Cook County Sheriff's Office had no duty to accommodate Mr. Tate. You know, your site for the proposition that we do not second guess the meaning of an employee's medical restriction is from a 1996 opinion from the Northern District of Iowa. What's your best case for this proposition in the Seventh Circuit? There is an additional case in the Seventh Circuit from 2020, which is COTASCA v. Federal Express Court, where it states the ADA does not obligate an employer to let its employees exceed their doctor's restrictions. So the plain meaning of a restriction is to be accepted by the employer. Yeah, that's a different point. I have to say, when you and the district court tell us we're not going to second guess an employer's judgment, yeah, that's pretty hard to reconcile with the ADA, with the regs, and a host of our cases. We do second guess. We give some significant weight to the employer's judgment. But it is hard to reconcile those broad statements with the law. Yes, Your Honor. The ADA itself does say that the job description shall be considered as evidence. Right. We've dealt with this many times. Yes, the difference is not absolute. However, here, even without absolute difference, it is clear that responding to emergency situations, inmate contact, and potentially using physical force, if necessary, is an essential function of the correctional lieutenant position. So what do we make of the testimony from Lewis and Collins to the effect that the lieutenants in charge of external operations or records just don't have inmate contact and don't need to be able to do this? So this sort of touches on your prior point. If we also consider the Code of Federal Regulations, the Code of Federal Regulations state that if a job's primary purpose is to do something, that is an essential function. So while you were referencing the fireman analogy earlier, a fireman's principal job duty is to rescue people from fires, to put out fires. It has been well established in the circuit that a correctional officer, regardless of rank, is to mitigate the danger present in a jail, including potentially responding to all-hands this case. Correct. There have been correctional officers. This is the first time, to my knowledge, that correctional lieutenant has been, but other correctional officers have been addressed by this court. Right. The plaintiff has tried to distinguish those on factual grounds with the evidence that I was asking you about. Yes, Your Honor. And to that point, Lieutenant Collins is actually not a lieutenant. He is a sergeant, if you look at the record. And so his testimony, he lacks personal knowledge to defeat summary judgment. Also, the case law is clear that someone else's, a co-worker's opinion of whether or not an individual can meet essential functions or legitimate expectations does not defeat summary judgment. That's, I'm not worried about their conclusions about the law. I'm worried about their testimony saying, lieutenants in these particular positions, that not all lieutenants are fungible in actual practice, the way the jobs are done, and that lieutenants in external operations and in records don't have inmate contact and therefore simply don't, as a practical matter, need to be able to respond to riots or other emergencies. So there are a couple of points to address for you. The first one is that just because it didn't happen on their shift does not mean it's not an essential function, that there is not an all-hands riot call. Again, just as a reminder, Mr. Collins was a sergeant, not a lieutenant, so his testimony is outside personal knowledge and not admissible. Second, there is plenty of testimony in the record, for instance, Lieutenant talking about how he used physical force on the job. There are references to 114 use of force incidents. And regardless of placement in the jail, there is always the possibility of an all-hands call or a riot where everyone in the jail, regardless of their location, would have to be able to respond. And in an emergency situation, which to your point earlier about what avoid means, even accepting Mr. Tate's definition of avoid, how do you walk up to Mr. Tate and say, can you respond to this emergency today in an emergency situation? And with that, also, as I noted in the brief, Lanziotti requires waiver of that argument by Mr. Tate, as he did not regarding what his definition of avoid should be. If we change one fact and hold everything else exactly the same, so don't change anything except one thing, and that is change the word avoid to limit, then what? Regardless, we could jump to my second reason. Mr. Tate, even if he was qualified, is not entitled to the accommodation that he requested. So he requested to be in an area without inmate contact, such as records, ex-ops, or the kitchen. This is, the ADA does not require an employer to supersede or override a seniority provision of a collective bargaining agreement. And correctional lieutenant positions are bid for, and those particular assignments are assigned via bidding. And as Ms. Ryerson explained to Mr. Tate, often newer lieutenants wind up in Divisions 9 or 10. That's where trainings are done. That's where the most common, it is the most common for use of force. All right, so let's change the second fact. Forget the collective bargaining agreement and go back to my question. Regardless, it would point about, in an emergency situation, how do you figure out who is limiting inmate contact that day? If there is a riot call, an all-hands call, do you walk around to the people with restrictions who say, you know, today I am limited and I cannot do this today? No, the point I think he would make is that when you draw upon the testimony of the Lewis's and the Collins's of the and if the medical opinion here was limit these situations, that doesn't mean avoid, just means limit. And in the ordinary course, he's able to limit them. And in the rare event that there's an emergency, well, he can step forward. How often does, by the way, as you answered Judge Scudder, how often does an all-hands call happen? Your Honor, I don't believe that's addressed in the record. The closest response that I could give you is in the record regarding the use of force incidents with correctional lieutenants, which was 114 between the years of 2016 and 2018. So I'm unsure about a specific all-hands call. I do believe that's outside the record. However, there is some measurable data for you about how often it happens. Ms. Gregory. Go ahead. No, go ahead, Judge. Ms. Gregory, on page 14 of your brief, the second paragraph includes several quotations for which Belinsky against American Airlines is cited. I didn't see the quoted language in the opinion. Oh, Belinsky? Yes. I wonder whether there might have been a mix-up in the notes somewhere along the line. I mean, I'm happy to offer a supplemental briefing if you would like. I just raised the question. Okay. Tell me something. Do you agree with Mr. Casper's statement about when his client first introduced the idea that a void meant he could still respond to a riot? I do agree that it was not presented during the ample time that he had to present it to the Sheriff's Office. There was a six-week period where he was interacting with Rebecca Ryerson and Sabrina Controlo-Rivera, who asked him to clarify his restrictions. He could have done that then. He did not. It wasn't until the district court, it seems to be sometimes, and then it wasn't until this brief where he asserted that a void meant to keep from or refrain from sometimes, occasionally, instead of always. We see a lot of Social Security disability cases where restrictions are ordinarily phrased quite specifically in terms of what the claimant can do frequently, occasionally, and never. Okay. Yes, Your Honor. I would agree that without having occasional or frequent here, the default would be to never for the use of a void. And if there are no further questions, we rest on our briefs and ask this court to affirm the judgment of the district court. Thank you. Thank you. Okay. Mr. Casper? You asked for two minutes, but I think you're going to need a little more. Let's give him five. Thank you, Your Honor. Actually, I just do have a couple points to make in rebuttal. First of all, one of the glaring absences from the factual record below was when did the all-call, meaning an emergency where all officers at the jail needed to respond to, when did that ever happen? There wasn't any evidence deduced by any of the witnesses in any of the depositions that that had actually ever happened. In theory, we concede it could, but again, the issue is what is an essential function and does a hypothetical mathematical limited chance that something can we submit that that's for the jury to tell us, not for us or the court on summary judgment. The second point I wanted to make on rebuttal is about the 114 uses of force incidents, which didn't really come up much in the briefing. But if you were to analyze all of those, first of all, I would say most of them happened in certain divisions and the role of the lieutenant was very, very disparate in all of them. And some of them, the lieutenant stood on the scene and didn't do anything and didn't get hands on at all. And there was no need for him to get hands on at all. It's somewhat illusory to say, well, there was 114 uses of forces. Not so. You have to go into them all and look at them each individually to understand would any of those situations have interfered with Mr. Tate's restrictions? And we submit, actually, no. Finally, the last point I do want to make is just about this issue of, well, when did Mr. Tate first raise in his dialogue with to avoid? And we submit it was on the medical paperwork. It said avoid. How much more does he need to say in his discussions with them? They've got the paper that says avoid. And these folks do this. Ryerson said she does this all the time. Presumably, she's seen doctor's restrictions that says don't do it. Presumably. I don't want to mistake the record. But here it said avoid. How much more notice does he need to give them that it doesn't say he can never do it? It says, just avoid, limit, your honor's words. And we submit that the employer's judgment was erroneous for not giving it the plain language meaning that avoid has. So for those reasons, I have nothing else to run. Well, so in other words, it's your position that avoid means limit. It's hard. So suppose somebody has a weightlifting limit. It says avoid lifting weights. So in the FedEx case, avoid lifting weights over 50 pounds. Can the employer insist that once a day, the person lift more than 50 pounds? I think it just comes down to the specific facts of every single interactive process that happens. And I don't think we can draw a bright line rule on how frequently avoid or limit disqualifies an employee. I think it's got to come down to that interactive discussion, which here, the other dimension of the interactive discussion was that Ryerson and Cantrell didn't really give him a chance. He was out the door from our view of the interactive discussion the moment they saw the avoid situations involving a significant chance of violence. So there wasn't much more he could say, given that the fait accompli view they had. And your bottom line, as you stand here, is that the meaning of avoid is a jury question. It is, Judge. Your Honor, I yield the rest of my time and just ask this Honorable Court to request a district court. Thank you very much. Well, we want to thank both of you, Mr. Taffer, Gregory. The case is going to be taken under advisement.